**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE WORLD TRADE CENTER LOWER MANHATTAN DISASTER SITE LITIGATION | Case No.: 21 MC 102 (AKH) |
| | (all actions identified in the table attached hereto as Exhibit I) |
| THIS DOCUMENT APPLIES TO ALL LOWER MANHATTAN DISASTER SITE LITIGATION | **CERTIFICATION OF MARC D. CROWLEY ON BEHALF OF DEFENDANTS DEUTSCHE BANK TRUST CORPORATION, DEUTSCHE BANK TRUST COMPANY AMERICAS, AND DB PRIVATE CLIENTS CORPORATION** |

MARC D. CROWLEY, of full age, hereby certifies as follows:

1.      I am an attorney-at-law of the State of New York and am counsel to the firm of Day Pitney LLP, attorneys for defendants Deutsche Bank Trust Corporation, Deutsche Bank Trust Company Americas, and DB Private Clients Corporation. In that capacity, I am familiar with the facts set forth herein.

2.      I submit this certification in opposition to the motion to transfer and/or stay of defendants Tully Construction Co. Inc. and Tully Industries, Inc. (together, "Tully")

3.      Attached hereto as Exhibit "A" is a true and correct copy of the Opinion and Order Granting and Denying Motions to Stay, entered on September 21, 2007.

4.      Attached hereto as Exhibit "B" is a true and correct copy of Case Management Order No. 3 in 21 MC 100, entered on February 10, 2005.

1

5.    Attached hereto as Exhibit "C" is a true and correct copy of an unnumbered Case Management Order in 21 MC 100, dated August 9, 2005.

6.    Attached hereto as Exhibit "D" is a true and correct copy of Case Management Order No. 1 in Master Docket No. 21 MC 103, dated March 28, 2007.

7.    Attached hereto as Exhibit "E" is a true and correct copy of Case Management Order No. 3 in 21 MC 102, dated March 21, 2007.

8.    Attorneys working under my direction have reviewed the 101 complaints that are the subject of Tully's motion and have prepared a summary chart presenting relevant information from the complaints ("Summary Chart").  A true and correct copy of the Summary Chart is attached hereto as Exhibit "F".

9.    Attached hereto as Exhibit "G" is a true and correct copy of relevant excerpts from the transcript of the June 15, 2007 Case Management Conference held in 21 MC 102.

10.    Attached hereto as Exhibit "H" is a true and correct copy of the August 1, 2007 joint submission to this Court concerning Tully's request to transfer the Kirk Arsenault case (Civil Action No. 04-cv-5338) from 21 MC 102 to 21 MC 100.

11.    Attached hereto as Exhibit "I" is a table identifying the actions in which this certification is filed.  A copy of this table is also attached to the memorandum of law submitted herewith.

1583556A01112607

12.     Robin Wertheimer, Esq., counsel for plaintiffs Kirk Arsenault and Steven Zablocki, has represented to me that her clients were employed by Tully's subcontractor, Manafort Brothers, as steel cutters.

13.     On July 13, 2007, I requested that Tully's counsel identify which, if any, of plaintiffs' employers in the 21 MC 102 cases in which Tully is named, were contractors/ subcontractors for Tully or the DDC.  Tully has not responded to this request.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on: November 26, 2007

_____
MARC D. CROWLEY

3

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

IN RE WORLD TRADE CENTER DISASTER    :    21 MC 100 (AKH)
SITE LITIGATION
                                     :
                                     :
                                     :
------------------------------------------------------------ x

IN RE WORLD TRADE CENTER LOWER       :    21 MC 102 (AKH)
MANHATTAN DISASTER SITE LITIGATION
                                     :
                                     :
------------------------------------------------------------ x

IN RE COMBINED WORLD TRADE CENTER    :    21 MC 103 (AKH)
AND LOWER MANHATTAN DISASTER SITE
LITIGATION (straddler plaintiffs)    :
                                     :
                                     :
------------------------------------------------------------ x

KIRK ARSENAULT and STEVE ZABLOCKI,   :
                                     :
                         Plaintiffs, :    04 Civ. 5338 (AKH)
         - against -                 :
                                     :
TULLY CONSTRUCTION CO., INC.; TULLY  :
INDUSTRIES INC.; and DEUTSCHE BANK,  :
                                     :
                         Defendants. :
------------------------------------------------------------ x

STEVE ZABLOCKI,                      :
                                     :
                          Plaintiff, :    06 Civ. 15494 (AKH)
         - against -                 :
                                     :
TULLY CONSTRUCTION CO., INC.; TULLY  :
INDUSTRIES INC.; and DEUTSCHE BANK,  :
                                     :
                         Defendants. :
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

## OPINION AND ORDER GRANTING AND DENYING MOTIONS TO STAY

In the aftermath of the attacks on the World Trade Center on September 11, 2001,

thousands of workers came to the World Trade Center site and nearby locations to participate,

and to be engaged, in debris removal and other clean-up tasks. Some of these workers claim to

-1-

have suffered respiratory and other injuries, and have filed lawsuits against the City of New York, its contractors, building owners and others. The City of New York and certain contractors filed motions for judgment on the pleadings and for summary judgment based on claims of immunity from suit under state and federal law. On October 17, 2006, I denied their motions. See In re World Trade Ctr. Disaster Site Litig., 456 F. Supp. 2d 520 (S.D.N.Y. 2006).

Claiming a right of immediate appeal from my adverse ruling, the City and contractors filed a notice of appeal, and asserted that the filing of the notice of appeal ousted the Court's jurisdiction to conduct further pretrial proceedings. On January 8, 2007, I rejected their contention, holding that their notice of appeal was legally ineffective to divest the Court of its jurisdiction. See In re World Trade Ctr. Disaster Site Litig., 469 F. Supp. 2d 134 (S.D.N.Y. 2007). Defendants petitioned the United States Court of Appeals for the Second Circuit for mandamus relief, and moved for a stay of trial and pretrial proceedings.[1] Defendants' "Motion Information Statement" (Form T-1080, last revised 11/01/2006) pertaining to their motion for a stay states the "complete relief sought" as follows:

> Appellants ("Movants") respectfully request that [the Court of Appeals] enforce the divestment of jurisdiction in the District Court by immediately staying all further proceedings in the 21 MC 100 (AKH) action pending resolution of Defendants' appeal.

On March 9, 2007, the Second Circuit accepted Defendants' appeal, granted Defendants' motion for a stay, dismissed the mandamus petition, and issued a one-page order providing in its entirety, as follows:

> Appellants-petitioners [the City of New York et al.], through counsel, move for a writ of mandamus and a stay of the district court proceedings pending appeal.

---

[1] The defendants that appealed my Opinion and Order of October 17, 2006 and subsequently moved the Second Circuit for a stay of trial and pretrial proceedings are the City of New York; AMEC Construction Management, Inc.; AMEC Earth & Environmental, Inc.; Bechtel Associates Professional Corporation; Bechtel Construction, Inc.; Bechtel Corporation; Bechtel Environmental, Inc.; Bovis Lend Lease LMB, Inc.; Evergreen Recycling of Corona (E.R.O.C.); Plaza Construction Corp.; Tully Construction Co., Inc.; Turner Construction Company; and Turner/Plaza, A Joint Venture.

Appellees, through counsel, move to dismiss the appeal docketed under 06-5324-cv. Because it is at least arguable whether some or all of the assertions of immunity put forward by appellants-petitioners have merit, upon due consideration, it is hereby ORDERED that the motion for a stay of trial as well as pre-trial proceedings is GRANTED. See Mitchell v. Forsyth, 472 U.S. 511, 526–27 (1985) (immunity from suit is "effectively lost if a case is erroneously permitted to go to trial"). It is further ORDERED that, regarding the appeal docketed under 06-5324-cv, the appellees' motion to dismiss is referred to the merits panel that decides the appeal. Appellants-petitioners' motion for a writ of mandamus, docketed under 07-0185-op, is DENIED as moot. A scheduling order for the appeal shall issue forthwith and the appeal will be heard on an expedited basis.

In re World Trade Ctr. Disaster Site Litig., No. 06-5324-cv, 2007 U.S. App. LEXIS 8728 (2d Cir. Mar. 9, 2007).

Several parties, including defendants Tully Construction Co. Inc., Tully Industries, Inc. (collectively "Tully") and Verizon New York Inc. ("Verizon"), and plaintiffs Kirk Arsenault and Steve Zablocki, have filed submissions arguing that the Second Circuit stay order does, or does not, apply to them. I write to resolve these recurrent disputes relating to the application of the Second Circuit's stay order to the cases pending before me.

I hold, for the reasons stated below, that for defendants that appealed my ruling of October 17, 2006 to the Second Circuit and which moved for a stay of trial and pretrial proceedings, the Second Circuit's stay order is to be applied to the entirety of the World Trade Center site as defined in Case Management Order No. 3, 21 MC 100 (Feb. 9, 2005) ("CMO3"), regardless whether the claims against these appealing defendants are classified as related to 21 MC 100, 21 MC 102, or 21 MC 103. I hold, further, that defendants which did not appeal to the Second Circuit are not entitled to a stay, and that the cases against them are not stayed. The non-appealing defendants may move to be included in the stay by agreeing to be bound by the outcome of the appeal, or taking prompt steps to join the appeal, or otherwise showing good cause, within 20 calendar days of the date of this Order.

## Background

I.     **Proceedings taking place before the Second Circuit's Stay Order of March 9, 2007**

A. Removal and Remand Proceedings

Section 408(b)(1) of the Air Transportation Safety and System Stabilization Act of 2001, Pub. L. 107-42, 115 Stat. 230, reprinted as amended in note following 49 U.S.C. § 40101 ("Stabilization Act"), created a federal cause of action for "damages arising out of the hijacking and subsequent crashes of American Airlines flights 11 and 77, and United Airlines flights 93 and 175, on September 11, 2001." The Act conferred original and exclusive jurisdiction over all such actions on this Court. See Stabilization Act § 408(b)(3). Many plaintiffs who alleged injuries caused by exposure to contaminants at the World Trade Center site during the debris removal effort filed suit in New York State Supreme Court, considering their claims outside the jurisdictional scope of the Stabilization Act. Defendants, under the leadership of the City of New York and its counsel, removed such plaintiffs' cases to federal court. The large number of cases that Defendants removed to this Court, and that were subsequently assigned to me as related to the wrongful death claims filed by the legal successors of those who died on board the above-mentioned flights, were organized as a separate group under master docket number 21 MC 100. See Case Management Order, No. 21 MC 100 (Feb. 11, 2003). Plaintiffs moved to remand.

On June 20, 2003, I ruled on Plaintiffs' motions to remand to state court, holding that "claims of plaintiffs alleging respiratory injuries caused by exposure to contaminants in the demolition and clean-up efforts at the World Trade Center site, up to and including September 29, 2001, [arise under the Stabilization Act]," for they essentially involved searches and rescues of people thought to be trapped in the debris from the collapsed Twin Towers. Hickey v. City of

New York, 270 F. Supp. 2d 357, 379 (S.D.N.Y. 2003). As for the period after September 29,

2001, and at sites other than the World Trade Center, the activities essentially involved the

removal of debris characteristic to other workplaces, and I held that such claims were more

appropriately governed by developed state law regulating work sites, and more appropriately

overseen by experienced Supreme Court Justices. I held, further, that there was no indication

that Congress intended to federalize activities for months following the terrorist-related

hijackings and crashes on September 11. Thus, I ruled that "[c]laims arising from exposure after

September 29, 2001, or at sites other than the World Trade Center," did not arise under the

Stabilization Act, and thus failed to state a federal claim. Id.[2] But I declined to remand these

latter cases immediately. Noting that the jurisdictional competency of the federal and state

courts to hear such claims might remain in doubt following my order, and could affect the

certainty and reliability of all further proceedings, I stayed the order of remand as to the latter

cases, and certified my decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). See id.

at 381; In re World Trade Ctr. Disaster Site Litig., 456 F. Supp. 2d at 539.

    B.  Litigation Activity Pending Resolution of the Interlocutory Appeal to the Second Circuit

            With the appeal pending without decision for more than one year, and with the

public interest in advancing the cases remaining strong, I ordered that "[i]n light of the time that

has passed and other issues that have emerged, the parties should be required to proceed with

their pleadings." See Memorandum and Order, No. 21 MC 100 at 2 (Oct. 6, 2004). I noted that

the complaints of many plaintiffs were ambiguous as to the dates and places where the alleged

injuries occurred, and I required Plaintiffs to file supplements to their pleadings providing such

---

[2] Previously, I had held that certain non-respiratory injuries to workers at the World Trade Center site did not arise under the Stabilization Act, and I remanded them to the New York Supreme Court. See Spagnuolo v. Port Auth., 245 F. Supp. 2d 518 (S.D.N.Y. 2002) (plaintiff allegedly struck by falling oxygen tank); Graybill v. City of New York, 247 F. Supp. 2d 345 (S.D.N.Y. 2002) (plaintiff allegedly struck by falling steel girder).

specificity, with Defendants' answers to follow. See id. at 2. The task of providing specificity

for thousands of plaintiffs could not be managed within the time periods the parties had thought

reasonable and that I had ordered. On January 6, 2005, I convened a case management

conference to discuss the issue, and Defendants' desire to file motions to dismiss. The parties

agreed to submit a jointly-drafted case management order to govern these and other issues.

   The parties submitted their proposals, and on February 7, 2005 I signed Case

Management Order No. 2 in the 21 MC 100 master docket, appointing liaison counsel and

regulating filing and service of papers. Two days later, I issued Case Management Order No. 3,

No. 21 MC 100 (Feb. 9, 2005)—CMO3. CMO3 was recommended by "Plaintiffs' Liaison and

Steering Committee Counsel, Defendants' Liaison and Steering Committee Counsel, and counsel

for other parties," and reflected ideas I had suggested at the recent case management

conferences, particularly to order limited discovery relating to the immunity defenses that

Defendants proposed to assert as the grounds for their proposed dispositive motions. Id.

   CMO3 defined the World Trade Center site as follows:

> As used herein, the World Trade Center Site shall be defined as the 16-acre site
> including the sites of the buildings known as 1 World Trade Center, 2 World
> Trade Center, 3 World Trade Center (a/k/a the Marriott World Trade Center
> Hotel), 4 World Trade Center, 5 World Trade Center and 7 World Trade Center,
> as well as the surrounding plaza and underground shopping parking and public
> transit facilities. The World Trade Center Site shall also be defined to include the
> World Financial Center and Winter Garden, the Verizon Building at West and
> Vesey Streets, the Deutsche Bank Building at Liberty and Greenwich Streets, 90
> West Street, St. Nicholas Church, and 125 Cedar Street, as well as the Fresh Kills
> Landfill site, the debris-removal barges, piers and transfer stations. This
> definition is provided for the sole purpose of construing the provisions of CMO
> No. 3 and may not be utilized by the parties or cited by the parties for any other
> purpose.

Id. at 1–2.

C. The Second Circuit's McNally Decision and the Creation of the 21 MC 102 Docket

On July 14, 2005, the United States Court of Appeals for the Second Circuit ruled on Plaintiffs' motions to remand, and thus addressed whether Plaintiffs' respiratory illness claims arose under the Stabilization Act. See McNally v. Port Auth. (In re World Trade Ctr. Disaster Site), 414 F.3d 352 (2d Cir. 2005). The court affirmed my ruling that cases alleging injuries caused by exposure to contaminants at the World Trade Center site before September 29, 2001 should not be remanded, but, in dicta, took issue with my determination that cases arising out of injuries sustained elsewhere, or after September 29, 2001, should be remanded to state court. The McNally dictum emphasized the benefits of litigating common issues of law and fact in a single court, and found such approach consistent with Congressional intent to promote uniformity of awards and to ensure that statutory limits on liability for the airlines and other entities would be observed. See 414 F.3d at 371–81. Thus the court rejected the geographical and temporal lines of jurisdictional demarcation I had drawn in Hickey, and construed the Stabilization Act to encompass all the claims before it on interlocutory appeal. See McNally, 414 F.3d at 380.

I determined, following McNally, that I should adopt the dictum it expressed. See In re World Trade Ctr. Disaster Site Litig., No. 21 MC 100, 2005 U.S. Dist. LEXIS 14705 (S.D.N.Y. Jul. 22, 2005).[3] With license to construe the Stabilization Act's grant of federal jurisdiction broadly, Defendants removed cases arising out of exposure to contaminants, arising not only from areas comprising the World Trade Center as defined in CMO3, but arising also from other sites in lower Manhattan. I grouped all these cases administratively under the 21 MC

---

[3] After McNally, I remanded one case to state court for Defendant's failure to "show any connection, other than geography, between Plaintiff's alleged injury and the events of September 11." Milling v. City of New York, No. 05 Civ. 7189, 2006 WL 1652706 at *1 (S.D.N.Y. 2006) (plaintiff allegedly suffered injuries caused by trip and fall at Battery Place on May 14, 2002).

100 category, because they seemed to share some common issues of fact and law with the World

Trade Center respiratory and work-place injury cases, and because Defendants' liaison counsel

stated that they anticipated the assertion of contribution, indemnification, and similar claims by

the defendants in off-site actions against the defendants in 21 MC 100.  Case Management

Order, No. 21 MC 100 at 2 (Aug. 9, 2005).  Later, however, several weeks after the Second

Circuit issued its decision in McNally, I reconsidered the wisdom of one common grouping, and

created the 21 MC 102 master docket, recognizing that the off-site cases presented issues of fact

and law that were significantly different from those presented in 21 MC 100, including

potentially different jurisdictional issues, and should be "supervised on a separate basis."  Id.

The order that created master docket 21 MC 102 defined it by reference to CMO3, as follows:

> Cases brought by plaintiffs—such as clean-up personnel—alleging personal
> injury primarily based on circumstances and conduct in the period after the
> September 11, 2001 attacks, and based on conduct that occurred outside the area
> defined as the World Trade Center Site in Case Management Order 3 of the 21
> MC 100 case now constitute ...  [In re World Trade Center Lower Manhattan
> Disaster Site Litigation, 21 MC 102 (AKH)].

Id. (emphasis in original).

A few months later, on October 24, 2005, the parties submitted and I signed Case

Management Order No. 1, 21 MC 102.  The order directs liaison counsel to create a database to

store and organize specific claims information about plaintiffs associated with the 21 MC 102

docket and directs Plaintiffs to draft a master complaint to address the specific needs of the 21

MC 102 litigants.  See Case Management Order No. 1, 21 MC 102 at 1–2 (Oct. 24, 2005).  I also

recognized that the definition of the World Trade Center site given in CMO3 might need

adjustment in light of particular circumstances, and made explicit the provisional nature of the

definitions:

> Henceforth, upon the filing of a new action, plaintiffs alleging injuries incurred as
> the result of debris removal and clean-up work in [21 MC 102] locations shall

designate to the Clerk the inclusion of their action in 21 MC 102. Any plaintiff who alleges exposure in any location listed in the definition of the World Trade Center Site in CMO No. 3 entered in 21 MC 100, whether in an action already commenced or commenced hereafter, may be subject to a further ruling of this Court as to whether that plaintiff's action should be included in the 21 MC 100 docket.

No party may draw any legal or related conclusion, including, without limitation, liability or insurance coverage, by such designation. No party will attach any significance to such designation, other than its inclusion in 21 MC 102 or 21 MC 100 for administrative, tracking and discovery purposes and for the purposes of this instant CMO or subsequent CMOs addressing discovery and procedural issues, unless further addressed by the Court.

Id. at 2–3. Thus Case Management Order No. 1, 21 MC 102, withholds dispositive legal

significance from the World Trade Center site definition of CMO3, and leaves open the

possibility of further rulings on any issue that turns on the definition.

D. The City and Its Contractors Assert Immunity-Based Defenses and a Right of Immediate Appeal

The parties associated with the 21 MC 100 docket—claims arising out of

exposure to contaminants at the World Trade Center site—completed discovery pursuant to

CMO3 and Defendants moved for judgment on the pleadings and for summary judgment under

several theories of immunity. On October 17, 2006, I denied motions by the City and its

contractors, ruling that the "precise scope and extent of the immunity varies according to date,

place and activity" and that "the fact-intensive nature of the issue makes its resolution unsuitable

for resolution by motion." In re World Trade Ctr. Disaster Site Litig., 456 F. Supp. 2d at 575.

The Opinion and Order reviewed the history of CMO3 and subsequent proceedings, see id. at

539–40, and expressly incorporated the definition of the World Trade Center site set forth in

CMO3, see id. at 540 n.9.

As mentioned above, the City and its contractors filed a notice of appeal, and

asserted that the filing of the notice of appeal ousted the Court's jurisdiction to conduct further

pretrial proceedings. I rejected their contentions, see In re World Trade Ctr. Disaster Site Litig., 469 F. Supp. 2d 134, but the Court of Appeals for the Second Circuit found their contentions "at least arguable" and granted their "motion for a stay of trial as well as pre-trial proceedings." Thus, on March 9, 2007, the date of the Second Circuit's order, all proceedings against the City and its contractors classified as related to the 21 MC 100 master docket came to a halt.[4]

## II.    Proceedings taking place after the Second Circuit's Stay Order of March 9, 2007

### A.  The First Ruling on the Scope of the Second Circuit's Stay Order

The Second Circuit's order to stay trial and pretrial proceedings immediately raised the question, which cases were subject, or should be subject, to the order.  By March 9, 2007, thousands of cases had been filed, involving hundreds of defendants, at numerous locations in lower Manhattan.  Although many of these cases involved the same issues of immunity that the City of New York argued on appeal to the Second Circuit, others plainly did not.  Still other cases alleged multiple geographic locations of injury, raising questions whether the cases should be classified in the 21 MC 100 or 21 MC 102 dockets, or both.  Plaintiffs' counsel referred to such cases as "straddler" cases because they raised issues of law and fact shared by plaintiffs in both dockets.

The straddler cases marked the beginning of litigation over the scope of the Second Circuit's stay order.  Defendants argued that such cases should be stayed entirely, while Plaintiffs argued that claims against defendants that operated away from the World Trade Center site should be allowed to proceed.  To address this issue and other issues relating to the master pleadings in 21 MC 100 and 102, I created a third master docket dedicated to the "straddler"

---

[4] The Court of Appeals took two years and a month to decide the issue of jurisdiction posed by Hickey. Now, we have begun another delay to allow the higher court to address Defendants' assertions of immunity. Meanwhile, somewhere between 8,000 and 10,000 plaintiffs, many of whom claim to have life-debilitating and life-shortening injuries, are denied progress in their cases toward final determination of their claims.

plaintiffs, 21 MC 103. See Case Management Order No. 1, 21 MC 103 (Mar. 28, 2007). I held

that "Plaintiffs' claims arising from, or relating to, activities at the World Trade Center sites (as

defined in Case Management Order No. 3, 21 MC 100) shall be stayed until such time as the

United States Court of Appeals for the Second Circuit rules on Defendants' appeal in 21 MC

100,"[5] but that claims in 21 MC 102 should proceed. By joint letter dated June 14, 2007,

Plaintiffs objected to the stay order set out in Case Management Order No. 1, 21 MC 103,

arguing that it swept too broadly and without regard to provisions in earlier case management

orders that the CMO3 definition should have no effect on the legal rights of the parties.

Defendants replied that the CMO3 definition should remain in place because it provides for

administrative efficiency insofar as it permits the parties to determine whether a case should be

stayed, or not. The parties continued to debate the scope of the Second Circuit's stay, and its

relation to the definition of the several master dockets at a status conference on June 15, 2007.

See Hearing Tr. at 15–29 (June 15, 2007). In light of the dispute, I asked that motions to stay be

made to enable me to rule on the issue. See id. at 29.

B. Motions to Stay Filed by Defendants Verizon and Tully

Defendant Verizon moves to stay all claims against it, regardless whether such

claims are classified as related to 21 MC 100, 21 MC 102, or 21 MC 103. Verizon makes two

arguments in support of its motion: First, that the Second Circuit stayed all the cases pending in

the 21 MC 100 docket, which is defined to include Verizon, and second, that Verizon is entitled

to immunity under the New York State Defense Emergency Act and thus should be subject to the

stay for the same reasons as the stay applies to the City and its contractors. Defendant Tully

moves to stay all the claims against it, including the claims filed by plaintiffs Kirk Arsenault and

Steve Zablocki, for substantially the same reasons.

---

[5] This Order supersedes that aspect (paragraph 9) of my order of March 28, 2007.

-11-

Plaintiffs argue that this Court has never ruled that the CMO3 definition is coextensive with the scope of the Second Circuit's stay, and such holding would be inappropriate. They further argue that the Court has already determined that only claims against the City and its contractors should be stayed, and only where those contractors were subject to the supervision of the City's Department of Design and Construction. Because debris removal activities at the Verizon and Deutsche Bank buildings were not supervised by the Department of Design and Construction, they argue, claims arising out of such activities are not stayed.

C. <u>Plaintiffs Kirk Arsenault and Steve Zablocki</u>

On October 13, 2004, plaintiffs Kirk Arsenault and Steve Zablocki filed an amended complaint asserting claims against defendants Tully Industries, Inc., Tully Construction Co. Inc., and Deutsche Bank. Pursuant to the Court's instructions that each plaintiff in these consolidated actions file individually, plaintiff Zablocki amended his complaint on December 27, 2006 and, to separate himself from plaintiff Arsenault, initiated a separate civil action under a new docket number, 06 Civ. 15494 (AKH). The Civil Cover Sheet for the Zablocki action marked his case as related to 21 MC 100, the master docket for complaints filed by persons injured at the World Trade Center site.

Mr. Zablocki's attorneys subsequently requested that I transfer his case to the 21 MC 102 docket, where he began as a co-plaintiff with Mr. Arsenault. After reviewing the complaint, I declined the request on two grounds—first, because Zablocki worked at the Deutsche Bank Building, which, under CMO3, was included in the definition of the World Trade Center site, and second, because Zablocki sued a defendant, Tully Construction Co., Inc., that had joined the City's appeal to the Second Circuit and had obtained a stay of trial and pretrial proceedings. <u>See</u> Order Denying Motion to Transfer Dockets, No. 06 Civ. 15494 (Apr. 13,

2007).  By joint letter of August 1, 2007, plaintiff Zablocki reiterates his position that his case

should be classified as related to the 21 MC 102 docket, and therefore not stayed, and

Defendants reiterate their position that the <u>Zablocki</u> and <u>Arsenault</u> cases should be classified as

related to the 21 MC 100 docket, and therefore stayed pursuant to the Second Circuit's order of

March 9, 2007 and previous orders of this Court.

<strong><u>Discussion</u></strong>

The question presented is whether all claims arising out of the events of

September 11, 2001 against defendants Verizon and Tully are stayed pursuant to the Second

Circuit's order of March 9, 2007 and, if not, whether such claims should nevertheless be stayed

by order of this Court.

**I.      Scope of the Second Circuit Stay**

The Second Circuit's stay order was too brief to make the scope of its application

clear.  The stay might apply only to the City and the contractors that had joined its appeal; it

might apply to every case classified as related to the 21 MC 100 docket; it might apply to every

defendant that can assert an "at least arguable" basis for immunity; or it might have an

application that combines these criteria.  In the absence of definition by the Court of Appeals, it

falls to me to define how the stay should be applied.

I hold that for defendants that had appealed my ruling of October 17, 2006 to the

Second Circuit and that had moved for a stay of trial and pretrial proceedings, the scope of the

Second Circuit's stay order is coextensive with the definition in CMO3 of the World Trade

Center site.  Because the order of the Court of Appeals granted a motion seeking a stay of "all

further proceedings in the 21 MC 100 action," the Second Circuit's stay should apply to all

claims against Tully arising out of the area defined as the World Trade Center site in CMO3.

-13-

The Court of Appeals granted the stay to the parties that sought it—the City and certain of the contractors that the City had engaged—those that had appealed to the Court of Appeals. However, it has not been shown that every defendant working, or engaging in activities, within the World Trade Center site had been engaged by the City, and was supervised by the City, with respect to the activities alleged in the complaints in issue. Plaintiffs argue that defendant Verizon's clean-up efforts involved its, and not the City's, direction and supervision. See Declaration of Christopher LoPalo, 21 MC 102 ¶ 17 (Aug. 3, 2007). Since the stated basis of the Second Circuit's ruling was that appellants-petitioners had put forward an arguable claim of immunity, it would be a mistake to extend the stay to parties that had not presented a good faith basis for a similar defense. Verizon argues for such a defense, but has not yet shown its entitlement.

## II.    Application of Stay as Applied to Other Defendants in 21 MC 100, 102, and 103

The Second Circuit's stay order does not apply to cases against defendants that did not join the City's appeal, or that cannot show an arguable basis for immunity, or that do not wish to obtain a stay of the proceedings. Therefore, if a defendant that did not join the City's appeal wishes to stay the proceedings against it on grounds of immunity, it may move promptly for a stay in this Court pursuant to the Second Circuit's interim order. Otherwise, the case against the defendant is not stayed, and the parties may proceed with discovery.

### A.    Verizon

Defendant Verizon has moved for a stay of the proceedings, on the basis of its affirmative defense of immunity from suit under the New York State Defense Emergency Act. Verizon asserts that it "acted at the direction of City, State, and federal authorities to stabilize Lower Manhattan's telecommunications network, a task that required restoration of the Verizon

Building." Verizon's Motion to Stay at 2. That is not enough. Verizon must show when, and by whom, it was engaged, and at whose direction work was supervised, and the relation of such work to the task of restoring "essential community services." Verizon, if it wishes to gain the protection of the Second Circuit's stay, must move promptly in this Court to make such a showing, or promptly join the appeal to the Second Circuit, or agree to be bound by the determination to be made by the Second Circuit Court of Appeals, within 20 calendar days of the date of this Order.

B.  World Financial Center

By letter dated August 27, 2007, defendant Merrill Lynch & Co. Inc., the American Express defendants, the Nomura defendants, the Brookfield defendants, and defendant Battery Park City Authority, all of which have been sued in connection with work allegedly performed at the World Financial Center, suggested that the Court consider modifying the CMO3 World Trade Center site definition to exclude the World Financial Center.[6]  Counsel advised the Court that these defendants are not interested in staying the cases against them, and prefer that litigation proceedings continue.

I rule that the cases against these defendants are not stayed, and that such cases may proceed with discovery, except to the extent that discovery proceedings seek to involve defendants to which the Second Circuit's stay applies. The public interest in moving these cases as expeditiously as possible outweighs the risk of duplicative discovery at such time as the stay may be lifted.

---

[6] By letter dated September 3, 2007, defendants Trammell Crow Company and Trammell Crow Corporate Services, Inc., join Defendants' letter of August 27, 2007.

III.     **Motion to Transfer Dockets**

Tully's motion to transfer all actions currently pending against it, from the 21 MC 102 docket to the 21 MC 100 docket, is denied without prejudice to renewal. While further proceedings in cases against Tully arising out of the CMO3-defined area are stayed, there is no need to create further administrative work for the lawyers or for courthouse staff, especially in relation to the uncertain status of the Deutsche Bank Building. A transfer may be appropriate at some later time.

The World Financial Center defendants state in their letter of August 27, 2007 that the cases against them have been classified as related to 21 MC 102, even though the World Financial Center falls within the CMO3 definition. For the reasons given, and because Plaintiffs and these defendants wish to proceed, there is no need to transfer cases at this time.

A plaintiff filing a complaint after the date of this order should continue to mark his case as related to 21 MC 100 if the claims arise out of work performed within the CMO3-defined area. The Court will adjust the definition of the 21 MC 100 master docket, as and to the extent appropriate, after the Second Circuit issues its ruling on the pending appeal.

<u>Conclusion</u>

For the foregoing reasons, defendant Tully's motion to stay is GRANTED and defendant Verizon's motion to stay is DENIED without prejudice to renewal. Accordingly, the actions filed by plaintiffs Zablocki and Arsenault are STAYED.

SO ORDERED.

Date:          September 21, 2007
               New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

-16-

# EXHIBIT B

 

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE WORLD TRADE CENTER
DISASTER SITE LITIGATION

Master Docket No.: 21 MC 100 (AKH)

## CASE MANAGEMENT ORDER No. 3

This Order outlines the timing of and manner in which discovery limited to the subject matters of certain potentially dispositive motions, identified herein, that it is anticipated will be made by one or more Defendants in these actions is to be conducted in the above-captioned World Trade Center Disaster Site Litigation (the "Litigation"). This case management order ("CMO No. 3") is the product of recommendations by Plaintiffs' Liaison and Steering Committee Counsel, Defendants' Liaison and Steering Committee Counsel, and counsel for other parties, but departs from those recommendations and reflects my own requirements in certain requests.

### I.     Definitions

As used herein, the World Trade Center Site shall be defined as the 16-acre site including the sites of the buildings known as 1 World Trade Center, 2 World Trade Center, 3 World Trade Center (a/k/a the Marriot World Trade Center Hotel), 4 World Trade Center, 5 World Trade Center and 7 World Trade Center, as well as the surrounding plaza and underground shopping, parking and public transit facilities. The World Trade Center Site shall also be defined to include the World Financial Center and Winter Garden, the Verizon Building at West and Vesey Streets, the Deutsche Bank Building at Liberty and Greenwich Streets, 90 West Street, St Nicholas Church, and 125 Cedar Street, as well as the Fresh Kills Landfill site, the debris-removal barges, piers and transfer stations. This definition is provided for the sole purpose of

MICROFILM     -9:00AM
FEB 14 2005

construing the provisions of CMO No. 3 and may not be utilized or cited by the parties for any other purpose.

## II.     Defendants' Motions

Defendants' Liaison and Steering Committee Counsel previously have identified for the Court and for Plaintiffs' counsel certain motions that they anticipate will be made by one or more Defendants and which may be dispositive of some or all of the individual actions in the Litigation. The Court has expressed an interest in having focused and specific discovery ("limited" discovery) undertaken regarding the subject matters of these motions in order to develop an appropriate record for these motions. This CMO No. 3 sets forth the plan for this limited discovery and the Defendants' dispositive motions to follow.

Defendants contemplate the following motions for summary judgment or judgment on the pleadings dismissing some or all of Plaintiffs' claims with prejudice based on various provisions of statute or common law proving immunity to defendants against plaintiffs' claims. Among such provisions are:

A.     The New York State Defense Emergency Act, N.Y. Unconsol. Law §§ 9101-9200;

B.     The New York State and Local Natural and Man-Made Disaster Preparedness Law, N.Y. Exec. Law §§ 20-29-g;

C.     Principles of common law immunity, to be identified, in reasonable detail within ten (10) days of the entry of this Case Management Order;

D.     Principles of federal immunity to be identified in reasonable detail within ten (10) days of the entry of this Case Management Order; and

2

E.    Those Defendants whose alleged liability would derive from their status as owner or lessee of the property at issue (or some part thereof), but who were not in control or possession of the relevant property at the time of Plaintiffs' claimed injuries may also file motions for summary judgment or for judgment on the pleadings, dismissing all or part of the claims against them.  Such defendants, within ten (10) days of the entry of this Case Management Order shall identify with specificity:

1)  The property involved; and

2)  The status of defendants with regard to such property; and

F.  Those Defendants whose alleged liability would derive from their status as owner or lessee of the property at issue (or some part thereof), but who were not in control or possession of the relevant property at the time of Plaintiffs' claimed injuries shall produce the specific documents reflecting the defendant's status and that of all others relating to the property.

3

### III.    Order of Discovery

A.    *Defendants' Preliminary Disclosure of Reasonably Ascertainable Information Relevant To Their Motions And Detailed Chronological Declarations*

      **1.    Briefs And Opinions Relating To Previously Filed Dispositive Motions In Other World Trade Center Litigations**

Within five (5) days of the entry of this CMO No. 3, Defendants' Liaison and Steering Committee Counsel shall provide Plaintiffs' Liaison and Steering Committee Counsel and the Court with all judicial opinions, previously filed briefs and supporting documentation in other World Trade Center Litigations not pending before this Court that are in Defendants' possession and relate to the subject matters of the motions identified herein.

      **2.    Preliminary Disclosure Of Organizations Involved In Rescue, Recovery, Debris Removal And/Or Construction At The World Trade Center Site And Documents Of Which Defendants Are Currently Aware And Intend To Rely Upon In Support Of The Motions Described Herein**

Within ten (10) days of the entry of this CMO No. 3, Defendants' Liaison and Steering Committee Counsel shall provide to Plaintiffs' Liaison and Steering Committee Counsel, a list identifying all city agencies and non-city entities that worked at or were in any way involved in the rescue, recovery, cleanup, debris removal and/or construction at the World Trade Center Site. Within thirty (30) days of the entry of this CMO No. 3, Defendants' Liaison and Steering Committee Counsel shall also provide to Plaintiffs' Liaison and Steering Committee Counsel copies of documents, if any, of which Defendants are then aware, of which Defendants intend to rely in support of their motions.

4

### 3.    Defendants' Detailed Chronological Declarations

Within thirty (30) days of the entry of this Case Management Order, each Defendant (except, as to the Contractor Defendants, only the four prime Contractors—Bovis, Turner, Tully, and Amec) shall provide to Plaintiffs' Liaison and Steering Committee Counsel a detailed chronological declaration that shall set forth the key arguments that the Defendant anticipates may be made to support the anticipated motions identified herein. In addition to key arguments then anticipated, each Defendant's detailed chronological declaration shall also set forth the following information.

(a)    The scope of work that the Defendant performed at the World Trade Center Site;

(b)    Where the Defendant performed work at the World Trade Center Site;

(c)    The dates when the Defendant began work, performed work, and concluded work at the World Trade Center Site;

(d)    Whether the Defendant entered into any contract for the work done at the World Trade Center Site, as well as copies of such contracts, if any exist;

(e)    The Defendants shall also disclose the internal "chain of command" structure for each entity during the relevant time period;

(f)    Defendants' declarations shall include: all declarations and orders issued by City, State and Federal agencies and departments governing: A) Occupational safety and health of workers at the site; and B) the provision of respiratory equipment to workers at the site and C) the access of workers, including firefighters, to the site;

5

(g)    The area of the World Trade Center Site the Defendant was assigned to, if

applicable; and maps of the World Trade Center Site depicting its division into

quadrants, to the extent the Defendant possesses such maps and if any such maps

in fact exist.

(h) Information concerning Defendants and/or subcontractors involved in

producing or providing respirators, air quality, or safety at the World Trade

Center site.

Defendants shall have the duty to supplement all discovery obligations within five days

after learning of information which, had it been known, should have been disclosed pursuant to

this CMO.

**B.    *Identification of and Discovery Requests to City Agencies and/or Departments***

    **1.    Plaintiffs' Identification of City Agencies and/or Departments From Which
They Intend to Seek Discovery and Related Discovery Requests**

Within twenty (20) days of the entry of this CMO No. 3, Plaintiffs' Liaison and Steering

Committee Counsel shall provide to Defendants' Liaison and Steering Committee Counsel a list

identifying the agencies and/or departments of the City of New York from which Plaintiffs seek

documents and information regarding the subject matters of the motions identified herein.

Within fifty (50) days of the entry of this CMO NO. 3, Plaintiffs' Liaison and Steering

Committee Counsel shall provide to Defendants' Liaison and Steering Committee Counsel a

detailed chronological declaration that shall set forth the key arguments that Plaintiffs then

anticipate may be asserted in opposition to Defendants' anticipated motions identified herein.

6

The Court will hold a Case Management Conference on Monday, April 18, 2005, at 4:00
P.M. to regulate further discovery, the filing of motions and oppositions and replies, and to
entertain further case management recommendations.

SO ORDERED

Alvin K. Hellerstein, U.S.D.J.

Dated: New York, New York
       February 7, 2005

CONSENTED TO:

Plaintiffs' Liaison Counsel                     Plaintiffs' Liaison Counsel

By:  Andrew Carboy, Esq.                        By:  Paul J. Napoli

Dated: New York, New York
       February ___, 2005

CONSENTED TO:

Defendants' Liaison Counsel                     Defendants' Liaison Counsel

By:  James E. Tyrrell, Esq.                     By:  Richard A. Williamson

Dated: New York, New York
       February ___, 2005

7

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IN RE WORLD TRADE CENTER DISASTER    :
SITE LITIGATION                      :
------------------------------------------------------------X

**CASE MANAGEMENT ORDER**

21 MC 100 (AKH)

05 Civ. 3090 (AKH)
04 Civ. 9003 (KMK)
04 Civ. 5338 (GBD)
04 Civ. 7217 (GBD)
05 Civ. 0631 (E.D.N.Y.)
04 Civ. 9507 (HB)
05 Civ. 1927 (AKH)
05 Civ. 1091 (AKH)
05 Civ. 1092 (AKH)
05 Civ. 1093 (AKH)

ALVIN K. HELLERSTEIN, UNITED STATES DISTRICT JUDGE:

WHEREAS, on Tuesday, May 9, 2005 at 4:00 P.M., and on July 13, 2005 at 4:00 P.M., I held status conferences in the above matters, and counsel for both plaintiff and defendants have submitted reports on these cases pursuant to my request at the July 13, 2005 conference, IT IS NOW, THEREFORE ORDERED THAT:

**MASTER DOCKET**

1. Cases brought by plaintiffs arising out of or relating to the September 11, 2001 attack on the World Trade Center were consolidated before this Court for pre-trial purposes pursuant to this Court's Order of November 1, 2002.

2. These cases were thereafter divided into three groups: Cases alleging wrongful death and personal injury based primarily on circumstances and conduct up to and including the attacks of September 11, 2001 were assigned the master docket number 21 MC 97; cases alleging property damage primarily based on circumstances and conduct up to and

1

including the attacks of September 11, 2001 were assigned the master docket number 21

MC 101 by order of March 14, 2005; cases brought by plaintiffs – such as recovery and

clean-up personnel – alleging wrongful death or personal injury primarily based on

circumstances and conduct in the period after the September 11, 2001 attacks were

assigned the master docket number 21 MC 100 by order of February 11, 2003.

3.  Cases brought by plaintiffs – such as clean-up personnel – alleging personal injury

primarily based on circumstances and conduct in the period after the September 11, 2001

attacks, and based on conduct that occurred outside the area defined as the World Trade

Center Site in Case Management Order 3 of the 21 MC 100 case now constitute a fourth

group. A master docket for this fourth group is hereby established: "In re World Trade

Center Lower Manhattan Disaster Site Litigation." 21 MC ___ (AKH).

4.  These cases are coordinated before me because the claims for respiratory injury share

several issues of fact and law with 21 MC 100 and the other World Trade Center cases,

and because the defendants state that they anticipate the assertion of contribution,

indemnification, and similar claims by the current defendants in the off-WTC site actions

against the defendants in 21 MC 100. The cases will not be coordinated directly as part

of 21 MC 100, however, because of plaintiff's desire to have issues of fact and law

unique to these cases supervised on a separate basis. The cases listed above are hereby

coordinated, and the approximately 300 cases the plaintiffs represent will be brought

shall be coordinated as related to this action.

5.  The Clerk of the Court is hereby ordered to list the cases named on Exhibit A of this

order as related to 21 MC ___ (AKH).

6.  Counsel shall file originals of papers that relate to all of the cases under 21 MC ___ in

2

accordance with the electronic filing procedures established for 21 MC 100 as defined in Case Management Order XX of March XX, 2005.

7. The Court designates Gregory Cannata, Esq. of The Law firm of Gregory J. Cannata, 233 Broadwa, 5th Floor, New York, New York 10279-0003, to serve as liaison counsel for the plaintiffs in this case. The Court designates as defendants Co-Liaison Counsel James E. Tyrrell, Jr., Esq. of Latham & Watkins LLP, One Newark Center, 16th Floor, Newark, NJ 07102, and Richard A. Williamson, Esq. of Flemming, Zulack & Williamson, LLP, One Liberty Plaza, 35th Floor, New York, NY 10006 (hereinafter referred to jointly as "Defendants' Liaison Counsel"). The Court directs the parties to coordinate their actions through Liaison Counsel. Nothing herein shall restrict the substantive rights of any party, including the right to be represented by separate counsel or to take separate positions from other parties. The Court reserves the right to designate liaison counsel for either plaintiffs or defendants as a replacement for the designations by the parties if the need should arise.

8. Appointment of Liaison Counsel and Steering Committee Counsel to act as set forth below will facilitate communications among the Court and counsel, minimize duplication of effort, foster the coordination of joint positions, and provide for the efficient progress and control of this litigation. Liaison Counsel are vested by the Court with the following responsibilities and duties:

   a. prepare and maintain an official service list of plaintiffs' and defendants' counsel in the cases subject to this Order including the persons or companies they represent, upon whom papers shall be served in this litigation;

   b. receive orders, notices, correspondence and telephone calls from the Court and

the Clerk of the Court on matters of general applicability on behalf of all plaintiffs or defendants, as the case may be, and to notify such other plaintiffs' or defendants' counsel of communications received from the Court; and

c.  perform such other administrative tasks as may be necessitated by this or future CMOs, by the agreement of the parties, or by order of the Court;

d.  maintain and distribute to co-counsel and to the opposing Liaison Counsel an up-to-date service list;

e.  coordinate with opposing Liaison Counsel and with the Court on scheduling issues;

f.  be responsible for the service and filing of joint pleadings and communications with the Court to the extent practicable;

g.  receive and, as appropriate, distribute to co-counsel orders from the Court and documents from opposing parties and counsel;

Except as may be expressly otherwise provided in this or future CMOs, all pleadings, motions and other papers served in these cases shall be served on plaintiffs' and defendants' counsel for all of the parties in the case(s) to which such papers apply. **Service on a Liaison Counsel shall not suffice as service on any other party.**

9.  The parties shall appear for a status conference on September 22, 2005 at 3:00 P.M. in Courtroom 14D, 500 Pearl St., New York, New York 10007.

SO ORDERED.

Dated:    New York, New York
          August 9, 2005

ALVIN K. HELLERSTEIN
United States District Judge

4

Ex. A

| Case Name | Docket Number |
|---|---|
| Racioppi v. Tully Construction Co., et al. | 04 CV 9003 (AKH) |
| Arsenault v. Tully Construction Co. Inc., et al. | 04 CV 5338 (SDNY, Judge Daniels) |
| Thomas v. The City of New York | 04 CV 7217 (SDNY, Judge Daniels) |
| Thompson v. The City of New York | 05 CV 0631 (EDNY, Judge Glasser) |
| Diversified Carting, Inc. v. The City of New York, et al. | 05 CV 9507 (SDNY, Judge Baer) |
| Markut v. Sakele Brothers L.L.C., et al. | 05 CV 1927 (AKH) |
| Foremska v. The Bank of New York Company, et al. | 05 CV 3090 (AKH) |
| Sanchez v. Logany LLC, et al. | 05 CV 1091 (AKH) |
| Valdez v. Logany LLC, et al. | 05 CV 1092 (AKH) |
| Checo v. Logany LLC, et al. | 05 CV 1093 (AKH) |

NN106120.2

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
IN RE WORLD TRADE CENTER DISASTER          :          21 MC 100 (AKH)
SITE LITIGATION                            :
                                           :
                                           :
-------------------------------------------------------------- x
IN RE WORLD TRADE CENTER LOWER             :          21 MC 102 (AKH)
MANHATTAN DISASTER SITE LITIGATION         :
                                           :
                                           :
-------------------------------------------------------------- x
IN RE COMBINED WORLD TRADE CENTER          :          21 MC 103 (AKH)
AND LOWER MANHATTAN DISASTER SITE          :
LITIGATION (straddler plaintiffs)          :
                                           :
                                           :
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

### Case Management Order No. 1, 21 MC 103

In the aftermath of the attacks on the World Trade Center on September 11, 2001,

many workers came to World Trade Center site and nearby locations to assist with debris

removal and other tasks. Some of these workers suffered respiratory and other injuries, and have

filed lawsuits. Those who worked at the World Trade Center site filed suit against the City of

New York and other contractors; their cases are consolidated as master docket 21 MC 100. See

Case Management Order No. 2, 21 MC 100 (Feb. 7, 2005). Those who worked at sites other

than the World Trade Center site filed suit against the building owners and others; their cases are

consolidated as master docket 21 MC 102. See Case Management Order, 21 MC 100 (Aug. 9,

2005).

The Court has learned that a substantial number of plaintiffs—190 at last count—

performed work at the World Trade Center site and at other sites. These plaintiffs have become

known as "straddler" plaintiffs because their allegations span master dockets 21 MC 100 and 21

MC 102. Their status as "straddlers" raised issues for plaintiffs' liaison counsel, for the Clerk's

office, and for me. Plaintiffs' liaison counsel lacked a check-off complaint that adequately reflected all the allegations needed to be made by these "straddler" plaintiffs, and commenced to file multiple complaints for the same individual. The Clerk's office did not docket multiple complaints for a single plaintiff, and the splitting of a cause of action into two parts, where the injury of which plaintiffs complain is indivisible as among the various "on-site" and "off-site" defendants named in 21 MC 100 and 21 MC 102, would confuse the proceedings and create a danger of duplicate recoveries.

Following the status conference of 21 MC 102 cases on March 20, 2007, I asked the parties to propose an order that would organize the filing of these "straddler" complaints. On March 26, 2007, the parties submitted a stipulated order, proposing to split the cause of action into two parts, one that would proceed, by separate complaint, within the 21 MC 100 master docket, and one that would proceed, by another complaint, within the 21 MC 102 master docket. Having considered this proposal with the Clerk, and in light of my concerns previously expressed, I decline to order the stipulation. Instead, I order as follows:

1. The Clerk shall maintain a separate master docket and case file under the heading In re Combined World Trade Center and Lower Manhattan Disaster Site Litigation (straddler plaintiffs), 21 MC 103 (AKH). Orders, pleadings, motions, and other documents bearing the caption of this Order shall, when docketed and filed in the Master File, be deemed docketed and filed in each individual case subject to this Order to the extent applicable, and ordinarily will not be docketed separately or physically filed in such individual case.

2. Plaintiffs' liaison counsel will create a "straddler" check-off complaint to comprehend all their claims for relief.

3. The "straddler" check-off complaints shall incorporate the master complaints in 21 MC 100 and 21 MC 102, and provide each plaintiff with check-boxes to identify his claims against particular defendants of those named therein. The "straddler" check-off complaint shall not include allegations other than those made in the 21 MC 100 and 21 MC 102 master complaints and check-off complaints.

4. Plaintiff shall file the "straddler" check-off complaint in 21 MC 103 as an amended complaint, and dismiss all other complaints, by June 1, 2007.

5. Those aspects of the check-off complaint that allege injuries caused by the City of New York and other defendants, arising from, or relating to, activities at the World Trade Center sites (as defined in Case Management Order No. 3, 21 MC 100), shall be coordinated with cases collected in 21 MC 100.

6. Those aspects of the check-off complaint that allege injuries arising from, or relating to, activities at sites other than the World Trade Center sites (as defined in Case Management Order No. 3, 21 MC 100), shall be coordinated with cases collected in 21 MC 102.

7. A document that relates to all "straddler" cases shall bear a caption as follows:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
IN RE COMBINED WORLD TRADE CENTER    :    21 MC 103 (AKH)
AND LOWER MANHATTAN DISASTER SITE    :
LITIGATION (straddler plaintiffs)    :    (all cases)
------------------------------------------------------------- x

The Court recognizes that a document that relates to all cases in the 21 MC 100 or 21 MC 102 dockets will, by definition, also relate to the 21 MC 103 docket. Such documents shall bear dual captions, as at the top of this Order.

-3-

8. A document that relates to one or more specific cases, but not to all cases, shall bear a

   caption as follows:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
IN RE COMBINED WORLD TRADE CENTER    :    21 MC 103 (AKH)
AND LOWER MANHATTAN DISASTER SITE    :
LITIGATION (straddler plaintiffs)
------------------------------------------------------------- x
JOHN DOE,                                          :
                                                   :    TITLE
                                    Plaintiff,     :
             -against-                             :    Civil Action Number(s) (AKH)
                                                   :
DEFENDANTS,                                        :
                                                   :
                                    Defendants.    :
------------------------------------------------------------- x

9. Plaintiffs' claims arising from, or relating to, activities at the World Trade Center sites (as

   defined in Case Management Order No. 3, 21 MC 100) shall be stayed until such time as

   the United States Court of Appeals for the Second Circuit rules on Defendants' appeal in

   21 MC 100.

10. Plaintiffs' claims arising from, or relating to, activities at sites other than the World Trade

    Center sites (as defined in Case Management Order No. 3, 21 MC 100) shall proceed in

    coordination with all other claims classified as related to 21 MC 102.

11. The law firm of Worby, Groner, Napoli, & Bern shall provide to the Clerk a list of cases

    by April 20, 2007, including the index number, date filed, and plaintiff's name, that

    should be classified as related to the 21 MC 103 docket.

12. The Clerk shall remove each case on the list provided by Worby, Groner, Napoli, & Bern

    from the 21 MC 100 and 21 MC 102 master dockets, and classify the case as related to

    the 21 MC 103 master docket.

-4-

13. Plaintiffs and Defendants shall submit a proposed order or orders appointing liaison

counsel to represent plaintiffs and defendants with cases classified as related to the 21

MC 103 master docket, by April 20, 2007. If multiple proposals are received, the Court

shall appoint liaison counsel from among the proposals.

      SO ORDERED.

Date:      March 28, 2007
             New York, New York

                                 ALVIN K. HELLERSTEIN
                                 United States District Judge

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                           :

IN RE WORLD TRADE CENTER        :     <u>**CASE MANAGEMENT ORDER NO. 3**</u>
LOWER MANHATTAN DISASTER    :
SITE LITIGATION              :    21 MC 102 (AKH)
                           :
------------------------------------------------------X

ALVIN K. HELLERSTEIN, U.S.D.J.:

          To promote efficiency in this consolidated litigation of over 600 cases, the parties

developed master complaints and accompanying check-off complaints. On March 20, 2007, I

held a status conference to address certain issues raised by the parties in relation to these

complaints. This Order re-states and clarifies the rulings I made at the status conference.

1. By consent of the parties, a plaintiff shall plead causes of action under New York Labor Law

    §§ 200 and 241(6) separately.

2. The check-off complaint shall not include a cause of action under New York Labor Law

    §§ 205-a and 205-e. Plaintiffs' liaison counsel represented that no plaintiff exists at this time

    that could assert such causes of action; therefore, the cause of action is unnecessary.

3. A plaintiff may not attach riders to the check-off complaint asserting additional causes of

    action or other allegations not covered by the master complaint. A plaintiff whose

    circumstances cannot be described by the master complaint and check-off complaint should

    seek consent to file an amended master complaint and check-off complaint from Defendants'

    liaison counsel and, if consent is not obtained, such plaintiff should file a motion for leave to

    amend the complaints.

4. A plaintiff should provide, to the extent he is able, the specific location worked, including the

    floor or floors of specific buildings, and the other items provided in the check-off complaints

    discussed at the status conference on March 20, 2007.

5.  Plaintiffs shall file and serve their master and check-off complaints by June 1, 2007.

6.  The parties shall appear, through liaison counsel, for a status conference on June 15, 2007 at

1pm.

SO ORDERED.

Dated:      March 21, 2007
            New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge